Good morning. May it please the Court, my name is Lawrence Stone. I represent the appellant in this matter, Raytheon Co. Before the break, my client was in the gallery, and they should return shortly. Here they come. Thank you. This case is about the representational rights of employees protected by Section 7 of the National Labor Relations Act. And the paramount importance of those rights. This matter deals squarely with an attempt by the union to curtail board procedure, curtail Section 7 rights. Well, the unobvious tool is that that's not the case. Yeah, the board disclaims anything. Well, the board really didn't look at the representation issue at first glance. What the board has said, essentially, is that it is hard for them to take the position that the mere filing of a grievance is a violation of the National Labor Relations Act. We have to look beyond that, because I think what's happened is the union's position has shifted. It's pliable, and it's transparent. They're looking at this provision of the contract that is typically called an after-acquired clause, a predicate for the implementation of that provision is the showing of majority support. That has not been done here. Okay. That's where I'm hung up. You say this is typically called an after-acquired clause? What is that? What's an after-acquired clause? It's typically called an after-acquired storage clause, and that is a negotiated provision in a contract between an employer and a union, where if the employer opens additional facilities that provided that the union can show majority support among the employees at that new facility, that the... That's the provision that's not in here. It's not in. It doesn't say anything about provided. It says it will offer the opportunity to represent them on the same basis as all other bargaining unit employees covered by the current collective bargaining agreement. That provision's not in there, so I'm having trouble seeing how you can call this an after-acquired clause. Well, but implied within that, Your Honor, is... Why is it implied? It doesn't say it. Because the National Labor Relations Act in Section 7 provides that very, very basic protection to employees, which is that they should not have union representation without the showing of majority support. The National Labor Relations Act... All right. So you're saying this is illegal without the implication that there's a – that provision is in it? Yes. That's exactly what we're saying. Okay. Where do I look for authority for the proposition that says that this, Agreement No. 9, is illegal unless you imply that provision? There's authority cited in our brief, which is the Lady Garment Workers Union case. But the issue before us is the propriety of referring this matter to arbitration. Well, that's correct, Your Honor. That's right. It is the matter of the denial of the stay of arbitration in the district court. Initially, the stay was issued pending the outcome of the board charges, and the court itself said that reading the grievance, it is hard to fathom how the union is not seeking representational rights without showing majority support. The board didn't go so far as to look at the representational rights, essentially saying during their investigation that no violation of the Act had yet been committed, as if to say that once an arbitrator rules, and say an arbitrator rules that they're going to apply that provision to this new facility, that then, and only then, will a violation of the Act occur. But even on a different basis, what we're also asserting is that because there hasn't been this predicate for majority support, the unions, and the union can't show this, because if they could, frankly, they would, that there has been a shifting theory on this case. The union did call it an after-acquired clause. Then they said they merely wanted an advisory opinion as to what this clause meant. Well, there's no mechanism in the contract for an arbitrator to issue an advisory opinion. Well, now they say there are people in place doing this work that would be covered by this, if you read the provision out of it. And had the union first gotten majority support, then they would have been able to trigger Supplemental Agreement 9, and then perhaps would have a dispute. Had they also said, well, Supplemental Agreement Number 9 means that we get access to the facility as we choose, then that may have triggered a dispute. Well, that the employer sent a letter, which was a year after the arbitration was sought to be commenced, on the basis of which the Court below said there's a dispute here subject to arbitration. And the union now says it's not relying on that letter. Well, apparently that's true. In the Kelly brief, that's correct. What is the position that the employer is taking, which is the basis for a claim that there's an arbitrable dispute here? Well, we're saying that there is no arbitrable dispute. There is no arbitrable dispute. There is no arbitrable dispute because they have not raised a violation of the agreement. The grievance procedure is very, very specific on this. The grievance procedure says essentially a grievance is a denial of a right under the agreement. Well, they've not asserted or alleged that there has been any denial of a right. Well, that was my next question. Is there anything which the union cannot do by virtue of the position that Raytheon has taken? Is there anything by way of access or activity to enlist employees? Well, that's actually a very good question. And I don't think that there is anything that they cannot do. I mean, they have the right to try and organize these people. These are independent contractors and vendors of the company, but perhaps that could form a dispute later on in the life of this case. But they've done nothing. They have not said that this is an access clause and been denied access. They have not said this is an after-acquired clause, we have majority support, apply the contract, and we have said or raised an objection to that. They have not said this is a neutrality provision. A neutrality provision is you do have that one letter from the assistant general counsel saying even if you had majority support, it wouldn't do you any good. But that, if you raise that to a disagreement, Your Honor, it becomes abstract because the letter is written a year after the grievance is filed. What's wrong with abstract? I'm sorry? What's wrong with abstract? Well, because the letter, we're dealing with hard and fast violations of the agreement. That's how we get to the grievance procedure. You can agree to arbitrate anything. Well, we can agree to arbitrate anything. You can agree to arbitrate whether the order is round. That's right. If you enter the contract to arbitrate that, you can do that. But we haven't done so, Your Honor. We've agreed. But that's a good question. You have a pretty broad provision in your contract that says anything arising out of the collective bargaining agreement. And they say, well, we have a dispute. We have a theoretical dispute, but it's a dispute about the collective bargaining agreement, and this arises out of it. No arbitrators are not out of the three judges. They can give advisor opinions. Although that mechanism, again, has not been negotiated into the agreement. That's right. I mean, arbitration is … But that's what we have to decide. Well, arbitration is a very, very broad scope. And arbitrators certainly are empowered to interpret provisions of the agreement when they're … Even theoretically and hypothetically. But, no, Your Honor, when there's a violation. I believe when there is a violation of the contract. You mean they couldn't be authorized to … If you have an agreement that said, we agree to arbitrate any dispute under the collective bargaining agreement, even theoretical and hypothetical ones, so long as we have some sort of theoretical disagreement, we arbitrate. Yeah. No, I believe that. You could do that. You certainly could do that. It's not lawful. Not at all. You certainly could do that. That's right. You'd be required to go arbitrate even a theoretical dispute. Correct. Correct. So the question we have is, is this provision broad enough to cover that kind of theoretical dispute? Well, and that's an interesting question, and I don't think it is broad enough for … Judge Sands' question was good. Mine is merely interesting. Excellent question. All right. There we go. Excellent question. All right. There we go. It is … That's much better. The grievance procedure talks about specifically the denial of a right under the agreement, and it's so specific as to include a provision that says, once a grievance has been filed, we want to know the date, the time, the place, the manner that it has occurred. Do you represent Raytheon? Yes, I do. Do you have people working in San Diego in the bargaining unit classifications? Not to my understanding. In this particular … Is that what this is all about? They say there are people in place doing this kind of work. These are vendors and contractors performing software engineering work. It may be … So you've got people working in these bargaining unit classifications. It may be follow-on work, Your Honor, but it is not the typical work that is done by the East employees. Yeah, okay. But that's going to be one of your defenses. But did you offer them the – offer East the opportunity to represent them on the same basis as other bargaining unit employees? When they filed a grievance in May of 2001, we offered them a tour of the facility. But you didn't offer them – offer East the opportunity to represent them? We did not. See, and I read them as saying, look, you obligated yourself to do this in this number nine. There's people down there, and so we've got a grievance. And you may have a defense. These are independent contractors. These are this, that, and everything else. But their brief says you've got people in place, and you should have offered this to them, and you didn't. Sounds like a garden variety grievance over people in place working to me. But see, what would have made that more interesting, Your Honor, if the union had articulated that dispute during the pendency of the grievance? And they never have. They've merely – Yeah, but that's a procedural objection, the kind of thing that the – that goes to the sufficiency of the grievance process. And that's a bit of an arbitrator. If your claim is, well, they're now trying to arbitrate something that's not properly raised by the grievance, that's not a good issue to raise here. That's not a bar of arbitration. That's something you raise with the arbitrator and say, don't disjudicate this because you didn't raise it properly. Well, I do – I'm going to do something distasteful. Let's look at the actual language of the contract together. Okay, Your Honor. Let's start with arbitration provision. This is page 68, article 25, section A1. Are you with me? Just a second, Your Honor. I'm sorry, what page? Well, I have page 68 of the CBA, article 25, section A. You may have it somewhere else. Yeah. What I have here appears on a sideways page. You see there's section A1? Yes, Your Honor. A grievance arising out of a terms of agreement, which has been properly processed with a grievance procedure and not settled, may be submitted to arbitration. Okay? So to me, it looks like this section simply requires a grievance. And then you arbitrate, right? Let's work our way backwards, okay? And then you go to page 62, section A1, and where it defines grievance. It says, a term grievance, as used in this agreement, shall be an alleged violation of sections of an article, or I'm sorry, of a section of an article of this collective bargaining agreement. Now, why isn't that satisfied here? They have alleged a violation of a section of the collective bargaining agreement. Now, maybe they're wrong. Maybe they're wrong about it, but that's what they've alleged. And that was a grievance. And then the only thing you need to go on to arbitration is that you have had a grievance, which was not settled. But there are other details. Well, what is the violation that has been alleged? Well, Your Honor, we don't know. We don't know. They're simply saying that we have refused to provide them the right to represent the employees in accordance with Supplemental Agreement 9. Has the union ever taken a position on what the violation is? They've taken shifting positions. And at this point, we're left merely with them asking, essentially, what does this provision mean? Well, you don't necessarily ask an arbitrator that question in isolation. An arbitrator decides disputes under the agreement. And if he or she needs to look to what a clause means. It's not in isolation. There are people working down there in these bargaining unit classifications. And you promised to offer them, offer East something, and you didn't. Well, we have on one other facility where people were working in those classifications. These classifications are different, which is why we offered them a tour of the facility, based on the collective bargaining relationship in May of 01. Once that was concluded, they filed the second grievance that has led us here. You thought you were going to show them around, they're going to be persuaded and go away. Perhaps. Perhaps. But that is part of the collective bargaining process. They then filed the second grievance. And the only way to implement Supplemental Agreement 9 is through majority support. Without that predicate, there is nothing really further that we can do. There is no violation that's cited by the grievance. I mean, it's simply the filing of a piece of paper. If the union said we, S.A. 9 means that it is an after acquired clause, a neutrality clause, then let's take an imposition. This is what S.A. 9 means, and this is what S.A. 9 requires the employer to do. And it has not done that. There'd be no dispute, would there, that there's a grievance. Well, if the union came knocking at the door at the San Diego facility, and we would not let them in, and they said this is an access provision, you're in violation for not allowing us in. If they had said it's a neutrality provision, which means that we would not object to union representation under Section 8c of the Act, and we did object, they would say that's a violation. But they've done nothing short of simply say that they're being denied the right to represent these employees. They take the position in their brief that they don't have to tell you what their theory is. They don't have to show their hand. Do you accept that? Well, they take the position that they don't have to tell us what their litigation strategy is. However, under the agreement itself, which really governs the procedure in this, in terms of the grievance, we have the right to know the time, the place, the date, the manner, who's involved in a violation of the agreement. And we have the right to know that because we have the right to know that. But that is simply a defense. You could say they didn't provide enough notice and, therefore, they must lose. That does not go to the question of arbitrability. But it does, I think, go to the question of, you know, what are they really asking for. And we should ask them that question. You've got about three and a half minutes left. What are you trying to accomplish here? Why don't you just go to arbitration, and when, if you're so confident that they don't have a case? Well, because there's a certain uncertainty, if you will, on going to arbitration. You don't necessarily know what an arbitrator may do. An arbitrator had actually been appointed in this case and withdrew based on this dispute sometime in 2002. But the fact that we submitted a letter to the union in discussions, the whole point of the grievance procedure is to discuss these issues because you may reach an understanding or you may reach a dispute, you may reach a decision that you can deal with. That letter was sent, you know, in accordance with that kind of procedure. And it can't, a year after a grievance has been filed, be the foundation for a violation of the agreement. Again, it becomes abstract at that point. If there was a violation, there would be something for us to arbitrate. If the union could show majority support as a predicate for the protection of these employees, then Supplemental Agreement Number 9 may be implemented. If you want to save two minutes for rebuttal, you'd better sit down. I will do that. Thank you. Good morning. May it please the Court. This is Desmond Lee representing the appellee in this case, East Local 1553. Where's the beef? Where's the beef? If we affirm and your arbitration is held, and it's the first meeting of the arbitrator. Yes. And the arbitrator asks counsel for the union. What is the union's interpretation of SA 9? Will you respond? Yes. I can respond by saying, I'm sorry, would you want me to respond to that question? Number one, and this is in the record, is the fact that we want access to this facility. I think that Mr. Stone made, I think, a really, really dispositive admission here by saying that if access is a question, then you have a dispute. Well, if you take a look at the record. Are you now just denied access? Yes. And the reason why we're denied access is because Mr. Gasparini's letter said, even if you can show majority support, SA 9 is inapplicable. And therefore, it doesn't matter how we frame it. I thought that was the first grievance, and you got access. We did. And that also informs the analysis for the second grievance. We want access again. And the thing is, we've seen worse. You asked for access again? Yes, we did. And that's the thing about that. In Mr. Seldo's declaration, and in Mr. Seldo's declaration, he recounts a conversation with Ms. Wanda Dorgan, who's counsel for Raytheon. And if you take a look at Supplemental Excerpts of Record 3, paragraph 9 on his declaration, and it's unfortunately single-spaced, you go down towards the end of it, and he says that I told her that the union would contend that SA 9 was such a clause and that it also gave the union a right of access to try to obtain a showing of majority status. And that's one of the issues that's put. That's not a request. It is a request in the sense that it's a ---- Not in the sense I told her X. The question was where did you ask for access. That's not we would request access. That's not a request for access. Wouldn't it be a very simple thing instead of pursuing this to just file a new request for arbitration, allege a specific violation, the denial of access? We could do that, Your Honor. And why go through all of this? Okay. I think the reason why is because what Mr. Stone and what Raytheon wants to do is to impose strict rules of pleading on grievance procedures. These are written by laypeople. They're meant for lay resolution. They don't track the Federal rules of civil procedure when you're trying to make allegations This is a matter of principle for you. Well, it's a matter of We are safeguarding the process of arbitration. Yes, that's one of the things. And if you believe It doesn't strike me as a very good reason to be spending all this money on lawyers and to do an appeal and to defend an appeal and to arbitrate this whole thing when you could very easily send a letter saying we ask for access and put this all beyond dispute and then they would either allow you access or you'd have a clear issue. Why? Well, because they're taking the position that irrespective of any demand that we make that SA-9 is going to be inapplicable, period. And that's one of the reasons why We know they had to give you access the first time And so they If you ask for access again, they may not Certainly they don't take the position that's not arbitrable. That's not right. You haven't asked for access again. Well, I would interpret Mr. Selvo's His declaration as When did this happen? Pardon me? When did this declaration take place? His declaration was part of the petition to compel the lower proceedings in the lower court. And it references what time frame? It references It was during the conversations on the petition itself. So it was after the grievance was filed. Now, are you So how can a conversation that takes place after the grievance is filed support your position? It has to be stuff that happened before, or else you haven't grieved it. Or it's not encompassing it. No, that's a question again for the arbitrator. Labor arbitration, again, is a very organic lay process where you pick up information before and afterwards. And again, if they're going to say that, well, you know, this occurred after the grievance was filed, that's something for the arbitrator to say, okay, yeah, that was something that you asked for after this was filed. And therefore, I'm not going to hear it. You got to file another grievance. That's not within my purview. And again, that's something that we put forward to them to just like the Shaw supermarket case. It sounds to me like you're fighting to know the fight. So I'm having difficulty grasping the legitimate reason you're doing this. If you want access, you can ask for access. You did it once. It was grieved. They granted access. What else do you want to get out of this? When you are said and done, if you get an arbitration decision that would give you everything you want, what would that sound and read like? What would the arbitrator say? Union wins, and here is all the relief the union gets. Give me sort of a Cliff's Notes summary of what that arbitration decision would say. That would be very hard to tell you right now, Your Honor, based on. Nevertheless, hard or not, that's what I'm asking you to tell me. And I'll tell you, if you don't come up with something good, I'm probably going to go against you. So you better make it good. The arbitrator's award would read something like the union will have access to the San Diego facility at reasonable times, agreed to between the parties so as not to disrupt the business that's being performed. And it would read also perhaps in terms of neutrality that Mr. Stone talked about. But as to the access issue, they can be. Anything else? I mean, those are the two things. Does access depend on which of the possible interpretations of SA 9 is enforced? Is that a correct one? I don't quite understand your question. The union says it may claim, on page 14 of the brief, the union may claim SA 9 is an after-acquired clause, a card check agreement, a prerecognition agreement, and or a neutrality agreement. Okay. I think Mr. Selva's declaration made clear that we're not looking for majority support right now. All we want to do is get a shot at organizing these people. So my question is, does the determination of your entitlement to access depend on how SA 9 is interpreted? No. No. We think it's, I mean, to the extent that, you know, there's the reason why I say that is because Mr. Stone says that if there's a dispute over access, if there's a dispute, and we don't think that there's a dispute as to whether or not we have access. It's just about the extent to which we have the access. So if you limit your grievance to access. Yes. This could be, that may not be resisted. But if you limit it to access. Yes. But if you limit it to access, then you don't come out of the arbitration with a holding, a ruling as to what the proper interpretation of SA 9 is. Well, I think you will in terms of the remedy that may have to be applied, but I think they could argue that it doesn't give you access. I suppose that's something they could argue. I understand your question correctly. But I've gotten two inconsistent answers from you. I asked you whether the right of access is dependent on which of the possible interpretations of SA 9 is adopted. And I thought you said it doesn't. Well, I think I'm sorry. I must have, I don't have the part of the brief that you're referring to. But my, let me restate my position to say that the issue of access is something that's going to be litigated or arbitrated. And the extent and the scope of the right to access is certainly something that's going to be for the arbitrator to decide. And I'm sorry if that doesn't answer your question. Is that decision as to the scope of access going to depend on which of the possible interpretations of SA 9 is adopted by the arbitrator? As to whether or not this allows you card check support and all that. I don't think. No, I don't think they turn the majority support question has anything to do with it, because I think that, you know, he was he was focusing on that. You know, you need to have majority support to trigger this application that has nothing to do with this issue. We just want access. That's it. I don't understand why you say in your brief and we don't have to tell you now what how we interpret SA 9, because that's a disclosure of our litigation strategy. Why you take that position rather than simply say we want access and access is not dependent on whatever interpretation you have. Well, I think it's you know, I think right now, to be very frank with you. And as this as Judge Kaczynski asked, you know, I think it was a very good question as to what we wanted on the arbitration. I think just to add some flesh to this whole thing, to show you exactly what we want in general terms. That's exactly what we think. So that you have an understanding of where this would go if you send this thing back down to an arbitration. That's basically what we would be doing. And I think that in all candor, that's something that you deserve. And I think right now we've decided to disclose that part so that you can you can or we can access that or we can we can argue access. And that issue so that there is a dispute and that we can go forward with this particular arbitration. Now, you say access, but it's not clear to me that they denied access to you. I mean, they they were ordered by the one in the one grievance to provide access. It was my impression or understanding and correct me if I'm wrong, that so far as the record discloses that that is still in effect. That the union was given access and continues to have access based on the earlier grievance. Am I wrong about that? I think you are, Your Honor. I think the the grievance that was filed prior to the one that's issued an issue in this case is was a two day affair. I believe that they allowed access for two days. And that clearly was something that I see. So that was a one time event. Correct. Correct. Not so the continuing obligation. And they understood what we meant by this. I mean, the thing is, this this is all about access and really. And now I have a different. I'm sorry. OK. I have a different impression. But you're telling me, no, this was a two day event, one time event other than access. Is there anything that the union is presently precluded from doing because of the position taken by Raytheon neutrality and agreement regarding neutrality? That that's something that's related to the question of access. Neutrality is that they will not take or they will not object to us being a collective bargaining agreement. In fact, there is a we are recognized. We get some support, majority support by the employees. Again, that majority support is not something that is the part of S.A. The thing is, we're going to go in there to try to determine what the conditions are, what what's going on. We may not even decide to go further. We might just say this is too much of a problem after you have access. Yes. And we might just say, you know, this this is, you know, what we want to do is we want to have access to determine whether or not, you know, or at least gather some information. This is essentially the last access you had on me. Why didn't you get that information when you had access? Because it was a two day tour, as indicated in Excerpt 63. And also there are a lot of things that develop over the course of time. That's why. Why didn't you simply ask for that again instead of turn this thing into an agreement nine battle that now it doesn't have anything to do with? Well, I think because the problem with the access issue on an off-site or an after-card site is that the we would have normally submitted another one. But they're saying that now, if you look at Mr. Gasparini's letter, that that that even if we do show majority support, that this whole thing is inapplicable, period. And that access, pardon me, including access. Yes. Include the whole article. It's a nine is inapplicable. Then it's it's, you know, it's so simple. And you file another grievance based on access. They come back and they say, no, not if they do. And I think there's some indication that they may not might not. But if they say, no, you're not entitled to access because that would apply only if I say nine men X and it doesn't. Then then this all disappears. Then you're before the arbitrator with the full scope of the arbitrage. Well, it's just a Trojan horse. It doesn't have anything else. You can't get it in the city. Should have knocked on the door. Well, I think I think we did. And I'd like to read I'd like to read from the excerpts that 87 as to why I believe the the union has taken it this far. Even if he's can establish an effective basis for a claim of majority support among the individuals it seeks to represent. The company believes that even under these circumstances, supplemental agreement number nine is inapplicable. So it doesn't matter what we do. We can go around. We can sign the cards, whatever it is. We can make them showing the majority support. They're still not going to give us access to failure to exhaust is excused because there's nothing to exhaust because they've already announced what their position will be. Well, that's that's one of the reasons why we're taking this up right now. I mean, that's the reason why we're taking it this far. If they were to say that, OK, we'll agree to arbitrate that issue by playing cat and mouse and not showing anybody what you were trying to do. I think you've really damaged your position materially saying, well, we're not going to tell you what we're going to do. We're not going to tell you what this is all about. And you should have known that when you got here, you were going to get grilled on what the hell is this all about. Correct. I understand, Your Honor. Now, you just claim the letter that the judge in granting arbitration relied on the letter. And you disclaim that and you disclaim it because of the time sequence. No, no, I disagree that we disclaim that letter, Your Honor. I think that he's saying that that's not the grievance. It's it's but it's relevant in showing that there's a dispute. I think that's that's that's what Mr. Soto was saying here. I don't think that it really could be construed as saying that it's something that is not relevant at all. It certainly does show that there is a dispute. And I understand, Judge Trott, your position is certainly something that I've taken a look at. I just want to make clear for the record that that the I've inherited this case as well. OK. Yeah. We've got to know what's going on. Sure. I understand what to do. I understand that. And that's why I decided to answer Judge Kaczynski's question regarding what the arbitral award should be with as much specificity as I could. There's a lot of access issues under California law, for instance, in Enrique Catalano, that allows organizers to go on private property. And a lot of those rules can be argued in that particular arbitration. So basically what we want to do is we just want to shot what organizers do. We just want to go there and and we will give a good shot at doing this. And that's all we really want. You say you don't. Thank you. You say you don't disclaim the letter. I just I have quotes from your brief. I don't have paid the union degrees. Quote, grievance is not based on this letter. OK, if you keep reading it, I think I think you said letter is not the basis of the grievance. OK, if you if you take a look at that, that might be a little misleading, because I think what Mr. Silva meant to inartfully say there was that that's not our grievance. But that letter does show what our grievance is about. Could you tell me now, affirmatively, what is the grievance? The grievance is about access, the access and potential neutrality issues. We want to go on on on site and we want to be able to do what we did with the rest or something like the resolution of the first grievance. And that I think, if anything, was a white elephant that was sitting in the room. I mean, to say that they didn't know what that or what we meant by that is, I think, a real disingenuous way of spinning this. And I think by arguing that this essay now is inapplicable is really just a form of union busting to say we don't want you to organize our these employees at all now. And I think that's that's all that's all born out. Do you have to have a collective bargaining agreement? No, not at all. Not at all. And the thing is, whether or not you do, our position is that this this this clause is essentially a waiver of their rights under Lechmere, their federal rights to bar non employees from their premises is now, in our opinion, hereby withdrawn. And that has nothing to do with majority support or anything else. You know, like I said, we may decide that these group of employees aren't worth representing, but we just want a shot at what's going on and what what's at stake here. And and the thing is, you would take a look at it to answer your question even further. Judge Kaczynski, if you take a look at the the resolution of the first grievance, that is that is at least a construct of what the arbitrary traders award may look like. We certainly want more than two days. We certainly want broader access. But if you take a look at that resolution, that is that is a starting point as to where we would suggest and argue Mr. Richman, the arbitrator in this case, go with saying, hey, this is what we'd want. So there's your concrete dispute. Thank you. Your time is up. Thank you. Rabbits out of the hat, cats out of the bag. Now, you know what it's all about. Well, I'm glad that my client is here because this is the first that we've heard since the onset of this litigation that that's what this case is about. And if that's true, if that's true, is there an issue as to the union's right of access? Well, there may be. And I don't necessarily agree with everything that Mr. Lee has said about the union's right to unfettered access to private property. However, you know, this happens at the local level. By that, I mean this happens at the workplace. There's a knock at the door where the union, we want to have access. Let's see what's going on. You can't have access. A grievance is filed. Then maybe perhaps we get into an arbitration about what sub nine means, whether it is access. And what you do in that case is you go back to the negotiation history. What did you talk about at the table? What did you mean by this provision? But if the union says we withdraw our previous grievance, we now file a new grievance. Our grievance is that we are denied the access that we are entitled to. And we want arbitration on that grievance. Well, that would be an arbitrable issue, would it not? If there were a denial of access at the local level, perhaps that would be an arbitral issue. Mr. Lee attributes a lot to me. I'm not the collective bargaining representative, but that perhaps would be an arbitrable issue. That perhaps would be a dispute. That never happened. We never got. In fact, maybe we'd say the grievance was moved. We did give him a right of inspection. And when I asked opposing counsels, state affirmatively now what is the grievance? He said the grievance is about access. We want to go on the site. They haven't asked for it. They haven't asked for it. And that's why it's nothing more. But if they do, and there is a denial of that or an inappropriate restriction on access, then you have a arbitral dispute that you will resolve in your arbitration. Perhaps we have a dispute under the contract. Correct. OK, thank you. Avoiding judicial estoppel by saying perhaps, that's nicely done. Thank you. Thank you for your time. With cases, how you will stand submitted. What makes the argument in the United States versus Korea?
judges: Kozinski, Trott, Sand